**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

KANITA PERKINS,

    Plaintiff,                       CASE NO.:

-VS-                            **JURY TRIAL DEMANDED**

EQUIFAX INFORMATION SERVICES,
LLC, EXPERIAN INFORMATION
SOLUTIONS, INC., MISSOURI HIGHER
EDUCATION LOAN AUTHORITY d/b/a
MOHELA, AT&T SERVICES, INC.,
CREDIT MANAGEMENT, LP, AND
RADIUS GLOBAL SOLUTIONS, LLC,

    Defendants.

_____/

## **COMPLAINT**

Plaintiff, KANITA PERKINS (hereinafter "Plaintiff"), by and through the undersigned counsel, sues Defendants, Equifax Information Services, LLC (hereinafter "Equifax"), Experian Information Solutions, Inc. (hereinafter "Experian"), Missouri Higher Education Loan Authority d/b/a MOHELA (hereinafter "MOHELA"), (AT&T Services, Inc. (hereinafter "AT&T"), Credit Management, LP (hereinafter "Credit Management"), and Radius Global Solutions (hereinafter "Radius Global")(hereinafter collectively "Defendants"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and 15 U.S.C. § 1692, *et seq.* ("Fair Debt Collection Practices Act" or "FDCPA").

## PRELIMINARY STATEMENT

1.       This is an action for an actual, statutory, and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA"), 15 U.S.C. § 1692, et seq. ("Fair Debt Collection Practices Act" of "FDCPA").

1

2.      Moreover,

> Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies. In 1970, the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA") was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. v. Burr, 551 U.S. 47, 52 (2007). Towards that end, the FCRA requires a company that reports consumer credit information, referred to as a consumer reporting agency ("CRA"), to "adopt reasonable procedures for meeting the needs of commerce" which are "fair and equitable to the consumer." 15 U.S.C. § 1681(b).

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *1

(E.D. Va. Mar. 18, 2011).


3.      Congress made the following findings when it enacted the FCRA:

> (1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
> (2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
> (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
> (4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that

consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for

consumer credit, personnel, insurance, and other information in a manner which is fair and

equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper

utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C.

§ 1681(b).

4.　　　Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

5.　　　Congress, when it enacted the FCRA in 1970, mandated the existence and use of reasonable procedures to assure the maximum accuracy of the personal and financial information concerning consumers compiled and sold to users by consumer reporting agencies ("CRAs"), such as Equifax and Experian.

6.　　　On December 4, 2003, President George W. Bush signed into law the amendments to the FCRA entitled the Fair and Accurate Credit Transactions Act ("FACTA"), Pub. L. No. 108-159 (2003):

> This legislation gives consumers unprecedented tools to fight identity theft and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers have the ability to better protect themselves and their families.[1]

7.　　　FACTA was enacted to, *inter alia*, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."[2]

8.　　　Prior to 2003, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies, including Equifax were under no obligation to treat an identity theft claim any different than a regular dispute.

---

[1]　http://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html as of May 22, 2019.

[2]　Pub. L. No. 108-159 (2003) http://www.gpo.gov/fdsys/pkg/PLAW-108publ159/pdf/PLAW- 108publ159.pdf last visited May 22, 2019.

9.      The FACTA amendments made it easier for identity theft victims to remove items of information that appeared on credit reports as a result of identity theft.

10.     Toward this end, Congress provided "powerful new tools" to consumers, including the right to dispute information due to fraud, obtain free credit reports due to identity theft and the right to request the truncation of Social Security numbers on consumer disclosures (commonly referred to as credit reports).

11.     FACTA also imposes additional duties on CRAs to repair the damage done to identity theft victims' credit files by blocking information that is the result of identity theft.

12.     Specifically, CRAs are required to block the reporting of any information in the file of a consumer that the consumer identifies is a result of identity theft, not later than 4 business days after receiving (1) appropriate proof of identity; (2) a copy of the identity theft report; (3) the identification of such information by the consumer; and, (4) a statement by the consumer that the information is not information relating to any transaction by the consumer. 15 U.S.C. § 1681c-2(a).

13.     The ability to obtain a "block" of information is especially important to consumers because once a block is in place, the account is permanently removed from the consumer's credit report and creditors are prohibited from sending the blocked account to collections.  *See* 15 U.S.C. § 1681m(f).

14.     On the other hand, when a dispute is made without a claim of identity theft may result in the deletion or suppression of an account, but the creditor may continue with collection efforts. *See* 15 U.S.C. § 1681i.

15.     A CRA may decline to "block" disputed information only if the CRA reasonably determines that the consumer's request is based on a material misrepresentation or made in error.

*See* 15 U.S.C. 1681c-2(c)(1). When a CRA declines to block information disputed pursuant to § 1681c-2(a), the CRA must notify the consumer, in writing, of the business name and address of any furnisher that it contacted upon receiving the identity theft report and that the consumer has a right to add a statement to the file disputing the accuracy or completeness of the disputed information. *See* 15 U.S.C. §§ 1681c-2(c)(2) and 1681i(a)(5)(B).

16.      When a CRA does not determine that a material misrepresentation or error occurred, it cannot decline to block before it requests additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

17.      "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." *Osada v. Experian Info. Solutions, Inc*., No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

18.      Despite the FCRA's requirements, Equifax and Experian regularly decline to block the reporting of fraudulent information by wrongfully rejecting valid identity theft reports outright and relying instead on the same verification process it uses for non- identity theft disputes.

19.      In violation of the FCRA, Equifax and Experian willfully and negligently failed to provide the plaintiff the notice required by 15 U.S.C. § 1681c-2(c)(2) after declining to block information that, pursuant to 15 U.S.C. § 1681c-2(c)(1), Plaintiff alleged as the result of identity theft.

20.     In further violation of the FCRA, Equifax and Experian willfully and negligently declined to block the reporting of information alleged by Plaintiff to result from identity theft in violation of 15 U.S.C. § 1681c-2(a), despite receipt of all required documentation from the plaintiff.

21.     The plain language of § 1681c-2 is clear, and Equifax and Experian are on notice of its requirements, both from the guidance of the Federal Trade Commission and the prior decision in *Osada, supra*. According to standardized policies and procedures, Equifax and Experian willfully treats valid identity theft claims as regular credit report disputes.

22.     Any identity theft claims Equifax and Experian deem to be lacking in information, Equifax and Experian willfully, and according to its standardized policies and procedures, declines to block the reporting of the fraudulent information outright rather than requesting additional information or documentation directly from the consumer (as it did with Plaintiff) and as required by 12 C.F.R. § 1022.3(i).

23.     Equifax and Experian violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has to know is unreliable. Equifax was given all the details necessary to identify the account, to correct the inaccurate reporting, yet failed to remedy their mistake.

24.     Equifax and Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

**FCRA VIOLATIONS AGAINST FURNISHERS**

25.     Likewise, the FCRA imposes duties on persons who furnish information to CRAs ("furnishers"). *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5). Specifically, furnishers must satisfy five duties after receipt of notice of a consumer dispute from a CRA.  15 U.S.C. § 1681s-2(b)(1)(A-E).

26.     AT&T, MOHELA, and Credit Management, as furnishers, violated the requirements of 15 U.S.C. § 1681s-2(b) and those violation will be detailed in this Complaint.

**HARD CREDIT PULL VIOLATION**

27.     Moreover, Plaintiff brings this consumer action against AT&T for violation of the FCRA for, without any permissible purpose or authorization, pulling Plaintiff's credit and making hard inquiry on her credit report.

28.     Plaintiff brings this suit because of AT&T's willful accessing of Plaintiff's sensitive personal information.

29.     The FCRA was passed by Congress in 1970 to ensure fair and accurate reporting of credit, promote efficiency in banking, and protect consumers' privacy.

30.     In line with these purposes, the FCRA prohibits users of a person's credit report from obtaining consumer reports unless the user has a permissible purpose for procuring the report defined in the Statute. Specifically, § 1681b(5) of the FCRA states:

> A person shall not use or obtain a consumer report for any purposes unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

31.     The FCRA also prohibits users from obtaining "information on a consumer from a consumer reporting agency under false pretenses." 15 U.S.C § 1681q.

32.     A *permissible* purpose under the Statute for obtaining a credit report is for the use in connection with a credit transaction involving a consumer. 15 U.S.C. § 1681a(3)(A).

33.     *Importantly*, the FCRA *distinguishes* credit reports obtained for purposes of being used in a credit transaction *initiated by the consumer* from those credit reports obtained for purposes of being used in a credit transaction where the transaction was *not initiated by the consumer.*

34.     A *valid* example of where an entity might procure a credit report in connection with a transaction not initiated by the consumer, is where the entity intends to use a report in order to make a *firm offer of credit* to the consumer whose report is being used. 15 U.S.C. § 1681b(c)(1)(B).

35.     However, if the consumer has *neither initiated a transaction nor authorized the provision of a full credit report*, the procuring entity can only see *limited* information about the consumer. 15 U.S.C. §§ 1681b(a)(3)(A), b(c).

36.     Specifically, under § 1681b(c), a user of a consumer's report who is pulling a report for the purpose of using information "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer" in a situation where no transaction was initiated *may not procure an entire credit report.*

37.      Instead, such entity may only receive:

(A) the name and address of a consumer;
(B) an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer; and
(C) other information pertaining to a consumer that does not identify the relationship of experience of the consumer with respect to a particular creditor or other entity.15 U.S.C. § 1681b(c)(2).

38.     Credit inquiries from entities in circumstances where the consumer neither initiated the transaction nor provided consent for a full report procurement *can adversely affect a consumer's credit score or impact the consumer's ability to procure future credit, because such inquiries are only viewable by the consumer. See* 15 U.S.C. § 1681b(c)(3) ("a consumer reporting agency shall not furnish to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer.").

### A. HARD CREDIT PULLS AND SOFT CREDIT PULLS

39.     In colloquial parlance, inquiries related to those transactions initiated by the consumer are known as "hard inquires" or "hard pulls." Inquiries not related to transactions initiated by the consumer are known as "soft inquiries" or "soft pulls."

40.      Hard pulls are visible to third parties who obtain a consumer credit report.

41.     Moreover, each hard pull can result in a credit score reduction of up to five points. *See Harkins v. Diversified Collection Servs., Inc.*, No. CIV. PJM 12-1229, 2012 WL 5928997, at *1, n. 1 (D. Md. Nov. 26, 2012).

42.     In fact, it is common for creditors to use the number of hard pulls on a consumer's credit report as a basis to *deny* an extension or continuation of credit.

43.     Soft pulls, however, are not visible to anyone other than the consumer, and do not affect the consumer's credit score. Soft pulls include inquiries made when a consumer checks his or her own credit report, inquiries made by a business with which the consumer already does business, and inquiries made by credit card or insurance companies to make firm offers of credit when no transaction has been initiated by the consumer.

44.     Soft pulls are not visible to other users of credit reports and do not affect consumers' credit scores.

**FDCPA VIOLATIONS**

45.      Moreover, Congress enacted the FDCPA in 1968 to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 *U.S.C.A.* § 1692(e); *accord* S.Rep. No. 95–382, at 1–2 (1977), *reprinted in* 1977 U.S. Code Cong. & Admin.News 1695, 1696 (stating FDCPA's purpose is to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices").

46.      MOHELA, Credit Management, and Radius Global, as debt collectors, violated the requirements of 15 U.S.C. § 1692, et seq**.** and those violation will be set forth in this Complaint.

47.      Accordingly, Plaintiff seeks redress for all aforementioned violations of federal law.

## JURISDICTION, VENUE, AND PARTIES

48.      The jurisdiction for this Court is conferred by 15 U.S.C. § 1681 (p) and 28 U.S.C. 1367.

49.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

50.      Venue is proper in this District as Plaintiff is a resident in this District, the violations described in this Complaint occurred in this District, and the Defendants transact business within this District.

51.      Plaintiff is a natural person and resident of San Antonio, Bexar County, Texas.

52.      Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692(a)(3).

53.      Plaintiff is an "alleged debtor."

54.     Equifax Information Services, LLC (hereinafter "Equifax"), is a Georgia corporation with a principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309, which does business in the state of Texas.

55.     Equifax is a "consumer reporting agency," as defined in 15 USC § 1681(f). Upon information and belief, is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

56.     Equifax disburses such consumer reports to third parties under contract for monetary compensation

57.     Experian Information Solutions, Inc. (hereinafter "Experian"), is a California corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, which does business in the state of Texas.

58.     Experian is a "consumer reporting agency," as defined in 15 USC § 1681(f). Upon information and belief, is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

59.     Experian disburses such consumer reports to third parties under contract for monetary compensation.

60.     Credit Management, Radius Global, and MOHELA are corporations collecting an alleged obligation which arises out of personal, family or household transaction.

61.     Credit Management, Radius Global, and MOHELA are corporations attempting to collect an alleged consumer debt from Plaintiff.

62.     Credit Management, Radius Global, and MOHELA are "debt collector[s]" as defined by 15 U.S.C. § 1692(a)(6).

63.     The alleged debts that are the subject matter of this complaint are a "consumer debt[s]" as defined by U.S.C. § 1692(a)(5).

64.     AT&T Services, Inc. (hereinafter "AT&T") is a Texas corporation with a principal place of business located at 208 S. Akard Street, Dallas, Texas 75202, which does business in the state of Texas.

65.     AT&T is a "furnisher of information" as that term is used in 15 U.S.C. § 1681s-2.

66.     Credit Management, LP (hereinafter "Credit Management") is a Texas corporation with a principal place of business located at 6080 Tennyson Parkway, Suite 100, Plano, Texas 75024, which does business in the state of Texas.

67.     Credit Management is also is a "furnisher of information" as that term is used in 15 U.S.C. § 1681s-2.

68.     Radius Global Solutions, LLC (hereinafter "Radius Global") is a Minnesota corporation with a principal place of business located 7831 Glenroy Road. Suite 250, Edina, Minnesota 55439, which does business in the state of Texas.

69.     Missouri Higher Education Loan Authority (hereinafter "MOHELA") is a Missouri corporation with a principal place of business located at 633 Spirit Drive, Chesterfield, Missouri 63005, which does business in the state of Texas.

70.     MOHELA is also is a "furnisher of information" as that term is used in 15 U.S.C. § 1681s-2.

71.     MOHELA is "one of the largest nonprofit student loan secondary markets in America . . . and a leading holder and servicer of student loans with $54.8 billion in student loan assets serviced as of June 30, 2018."[3]

72.     In 2011, MOHELA entered into a contract with the federal government to become a non-for-profit servicer and to service federal assets. MOHELA "is servicing 2.0 million federal asset accounts, representing approximately $37, billion in student loans, as of June 30, 2018." *Id*. In 2018, MOHELA, a non-for-profit servicer, received over $44,000,000 in servicing fees from the federal government.

## FACTUAL ALLEGATIONS

73.     Plaintiff is a veteran of the United States Air Force, who had her identity stolen while she was serving her country.

74.     On or about May 2018, Plaintiff applied for financial aid, in order to assist with the cost of attending a dental assistant program.

75.     During the application process, Plaintiff became aware of several fraudulent student loans that were taken out in her name.

76.     Plaintiff subsequently reviewed her credit reports and noticed that over $17,000 in student loans, fraudulent accounts, and a hard inquiry were all present on her credit reports.

77.     In early May 2018, Plaintiff filed an Identity Theft Report with the Federal Trade Commission (FTC), explaining that she had her personal information stolen and several inaccuracies on her credit report involving student loans.

---

[3] MOHELA's Report of Financial Statements and Schedule of Expenditures of Federal Awards, Sept. 12, 2018. Last visited May 22, 2019.

78.     On or about May 4, 2018, Plaintiff filed a police report (#1801461) with the Converse Police Department, detailing the identity theft. This police report was later sent to Equifax, Experian, and non-party TransUnion in the summer of 2018.

79.     Shortly thereafter, Plaintiff pulled her credit reports from Equifax and Experian and noticed several inaccuracies contained within the reports, including an incorrect name of "Kaniya Perkins," addresses, and phone numbers.

80.     On both Plaintiff's Equifax and Experian reports, several student loans from "MOHELA/Dept/ of Ed." were contained within these reports.

81.     At no time did Plaintiff take out any student loans for education. Plaintiff had no prior business transactions with MOHELA.

82.     Moreover, Plaintiff's Equifax and Experian credit reports contained inaccurate and mixed up information regarding Plaintiff's name, address, date of birth, and other pertinent identification information.

83.     On or about September 2018, Plaintiff contacted MOHELA by phone, explaining that she was the victim of identity theft and requested that she not be held responsible for the fraudulent student loans.

84.     MOHELA subsequently sent Plaintiff some forms to fill out. Plaintiff filled out these forms, several times, and sent them to MOHELA, but MOHELA failed to discharge Plaintiff from further loan responsibility.

85.     In or about October 2018, Plaintiff began receiving collection letters from Radius Global and Credit Management.

86.     Credit Management, a debt collector, explained in their letter that they were collecting a debt on behalf of "Time Warner Cable" on account number 260140050361890.

87.     Radius Global, a debt collector, explained in their letter that they were collecting a debt on behalf of "Career Education Corporation" on account number 30885857.

88.     Plaintiff never opened loans or had any business with either Time Warner Cable or Career Education Corporation. In turn, Credit Management and Radius Global were errantly attempting to collect on debts that Plaintiff was not responsible for.

89.     Plaintiff had communicated with both Radius Global and Credit Management, explaining to them that she knew nothing about these debts, that her identity was stolen, and never had any business dealings with Time Warner Cable or Career Education Corporation.

90.     Despite telling both Radius Global and Credit Management that Plaintiff had her identity stolen, they illegitimately continued their collection efforts by sending threatening letters to Plaintiff.

91.     On or about January 16, 2019, Plaintiff received a collection letter from AT&T, indicating that Plaintiff allegedly had an account with AT&T, and that AT&T was holding Plaintiff responsible for $1,455.51 delinquency. This letter also threatened Plaintiff with further collections, if Plaintiff did not communicate with AT&T by 1/26/19.

92.     Plaintiff subsequently communicated with AT&T, explaining to AT&T that she was not the individual responsible for this bill, and that she was the victim of identity theft.

93.     Plaintiff never contracted for any AT&T services, nor had any prior business dealings with AT&T. As such, AT&T was falsely attempting to collect a debt from Plaintiff.

94.     AT&T recklessly continued their collection efforts, errantly holding Plaintiff responsible for services she did not contract for.

95.     Plaintiff went on to receive collection letters from AT&T, in violation of the law.

96.     On or about May 1, 2019, Plaintiff received correspondence from Radius Global, attempting to collect a debt on behalf of Career Education Corporation for alleged student loans.

97.     Plaintiff never attended Career Education Corporation, took out student loans, or applied for any services from Career Education Corporation.

98.     Radius Global, in turn, was attempting collect on an illegitimate debt from Plaintiff.

99.     Plaintiff contacted Radius Global numerous times, explaining that this debt did not belong to her. Radius Global continued its collection efforts against Plaintiff.

100.    On or about April 9, 2019, Plaintiff received more correspondence form Credit Management, attempting to collect a debt on behalf of Time Warner Cable for alleged services.

101.    Plaintiff never contracted for services or received a benefit from Time Warner Cable.

102.    Credit Management, in turn, was attempting to collect on an illegitimate debt from Plaintiff.

103.    Plaintiff contacted Credit Management numerous times, explaining that this debt did not belong to her. Credit Management continued its collection efforts against Plaintiff.

104.    On or about April 30, 2019, Plaintiff received a letter from MOHELA, finally indicating that Plaintiff was the victim of identity theft, and her loans were to be discharged due to aforementioned fraud.

105.    The letter from MOHELA specifically stated:

The U.S. Department of Education (ED) has discharged all or a portion of the loan(s) listed on the enclosed page due to: -Idenity Theft.

**Discharge Information**

• You are no longer obligated to make payments on the discharged portion of the loans(s).
• Adverse Credit History associated with the discharged loan)s) that we previously reported to the nationwide consumer reporting agencies may be deleted, if applicable.

16

**…**

106.     The letter from MOHELA further listed all of the loans that were fraudulently obtained in Plaintiff's name including, but not limited to, DLSTFD-01/26/2015; DLUNST-01/26/2015; DLSTFD-06/16/2015;  DLSTFD-08/11/2016;  DLUNST-08/11/2016;  DLSTFD-04/14/2017; DLUNST-04/14/2018; DLSTFD-11/16/2017; and DLUNST-11/16/2017.

107.     Plaintiff subsequently sent the aforementioned MOHELA discharge letter to Equifax Experian and non-party TransUnion at least 3 times on or about May 2019, June 2019, and July 2019.

108.     Despite being provided the aforementioned MOHELA discharge letter, Equifax and Experian continued to report the fraudulent loans on Plaintiff's credit reports.

109.     On or about May 2019, Plaintiff reviewed her Equifax, Experian, and non-party TransUnion, credit reports and noticed the same inaccuracies.

110.     Plaintiff's Equifax report contained the inaccurate name of "Kaniya Perkins." Plaintiff's legal name is "Kanita Yakira Perkins." Equifax apparently has mixed Plaintiff's personal information with another person.

111.     To date, Equifax refuses to correct this information.

112.     The Equifax report contained several fraudulent  student loan accounts that Plaintiff never opened, including, MOHELA/Dept of Ed., Account Number xxxxxxxxxxxx0008, Reported balance $4,668;  MOHELA/Dept of Ed., Account Number xxxxxxxxxx0007, Reported balance $2,126; MOHELA/Dept of Ed., Account Number xxxxxxxxxx0006, Reported balance $3,611; MOHELA/Dept of Ed., Account Number xxxxxxxxxx0005, Reported balance $2,172; MOHELA/Dept of Ed., Account Number xxxxxxxxxx0004, Reported balance $3,611; and MOHELA/Dept of Ed., Account Number xxxxxxxxxx0001, Reported balance $443.

113.      The aforementioned loans were opened while Plaintiff was on active duty in the United

States Air Force. Plaintiff, at no time, opened the aforementioned accounts.

114.      Additionally, the Equifax report contained a fraudulent hard inquiry of "AT&T

Services, Inc.-LS, 17330 Preston Road, Suite 100A- January 2019."

115.      Plaintiff, at no time, made the aforementioned inquiry and has no knowledge of said

inquiry.

116.      Likewise, Plaintiff's Experian credit report contained several inaccuracies.

117.      Plaintiff's Experian credit report contained inaccurate social security numbers of

"6140" and "6740."

118.      Plaintiff's Experian credit report contained the address of 79 Powell Avenue, Drew,

MS 38737-9705. Plaintiff does not reside at this address and does not associate with this address.

119.      Plaintiff's Experian report even contained inaccurate names of "Kanitaya Perkins" and

"Katrina Perkins."

120.      Experian clearly mixed up Plaintiff's personal information with that of another,

unrelated individual.

121.      Plaintiff's Experian report contained several fraudulent  student loans and accounts that

Plaintiff never opened, including, MOHELA/Dept of Ed., Account Number 532200xxxxxxxxxx,

Reported balance $443, Date Opened 1/26/2015; MOHELA/Dept of Ed.,Account Number

532200xxxxxxxxxx, Reported balance $3,611, Date Opened 8/11/16; MOHELA/Dept of Ed.,

Account Number 532200xxxxxxxxxx, Reported balance $2,172, Date Opened 8/11/16;

MOHELA/Dept of Ed., Account Number 532200xxxxxxxxxx, Reported balance $3,611, Date

Opened 4/14/17; MOHELA/Dept of Ed., Account Number 532200xxxxxxxxxx, Reported

balance $2,126, Date Opened 4/14/17; MOHELA/Dept of Ed., Account Number

532200xxxxxxxxxxx, Reported balance $4,668, Date Opened 11/16/17; MOHELA/Dept of Ed., Account Number 532200xxxxxxxxxx, Reported balance $1,402, Date Opened 11/16/17; Credit Management-Account 690727xx- Balance $379; and Acima Credit FKA Simple-Account Number 21xxxx.

122.    Plaintiff, at no time, opened the aforementioned accounts.

123.    Additionally, Plaintiff's Experian report contained a fraudulent hard inquiry of "NATL ASSOC/INDEPENDENT L, Inquired on 5/15/2017."

124.    Plaintiff, at no time, made the aforementioned inquiry and has no knowledge of said inquiry.

125.    Plaintiff made several calls to Equifax and Experian, disputing the aforementioned inaccurate information.

126.    Each time, Equifax failed to reasonably investigate the inaccurate information, ultimately failing to delete the damaging accounts and inquiry from Plaintiff's credit report.

127.    Each time, Experian failed to reasonably investigate the inaccurate information, ultimately failing to delete the damaging accounts and inquiry from Plaintiff's credit report.

128.    On or about July 10, 2019, Plaintiff sent two (almost identical) dispute letters via certified mail to Equifax and Experian (USPS # 70190140000091030775), informing them of the aforementioned inaccurate information.  Each dispute communicated that there were many fraudulent accounts contained on Plaintiff's credit reports. Each dispute letter contained Plaintiff's personal information of her full name, social security number, date of birth, address for two years, and driver's license number.

129.    Equifax (USPS # 70190140000091030799) received Plaintiff's dispute letter on July 13, 2019.

130.     Experian (USPS # 70190140000091030775) received Plaintiff's dispute letter on July 12, 2019.

131.     Upon information and belief, Equifax received Plaintiff's dispute letter and notified the furnishers including, but not limited to, MOHELA and AT&T, about the inaccurate information contained in Plaintiff's credit report through the ACDV process.

132.     Upon information and belief, Experian received Plaintiff's dispute letter and notified the furnishers including, but not limited to, MOHELA, Credit Management, and non-party Acima Credit about the inaccurate information contained in Plaintiff's credit report through the ACDV process.

133.     After receiving the disputes from Equifax and Experian through the ACDV process, MOHELA, AT&T, Credit Management, verified the incorrect information to the credit bureaus, falsely alleging that the accounts and inquiry were accurate.

134.     In turn, Equifax and Experian continued to report the false and misleading information on Plaintiff's credit reports.

135.     Despite being provided with the aforementioned letter and information, each of the credit reporting agencies, Equifax and Experian failed to delete the damaging inaccurate information from Plaintiff's credit reports.

136.     On or about July 17, 2019, Equifax sent Plaintiff a letter stating, "Dear KANIYA PERKINS: We are pleased to let you know that the results of the dispute you recently filed with Equifax are complete….>>>The disputed item is not currently reporting on the Equifax credit file. Company Name Mohela/Dept of Ed Account Number:0005 >>>The disputed item is not currently reporting on the Equifax credit file. Company Name Mohela/Dept of Ed Account Number: 0001>>>The disputed item is not currently reporting on the Equifax credit file.

Company Name Mohela/Dept of Ed Account Number: 0007>>>The disputed item is not currently reporting on the Equifax credit file. Company Name Mohela/Dept of Ed Account Number: 0006>>>The disputed item is not currently reporting on the Equifax credit file. Company Name Mohela/Dept of Ed Account Number: 0004."

137.    Equifax still maintained a mixed file for Plaintiff, as her name and other identification information was inaccurate.

138.    Equifax failed to delete the AT&T hard credit pull that was illegally contained on Plaintiff's Equifax report.

139.    Equifax incorrectly asserted that the Mohela/Dep of Ed student loans were "not currently reporting on the Equifax credit file."

140.    Equifax failed to delete the prior disputed information from Plaintiff's credit report.

141.    On July 25, 2019, Equifax sent Plaintiff another letter, still incorrectly addressing Plaintiff as "Kaniya Perkins."

142.    The July 25, 2019 letter contained dispute results for accounts, balances, identification information, and payment history that Plaintiff never disputed. Equifax continued to mix up Plaintiff's information with another, unrelated individual.

143.    Equifax, still failed to delete the inaccurate "Mohela/Dept of Ed" inaccurate information, and the prior July 17, 2019 dispute results letter was clearly a misrepresentation because Equifax maintained that the latest reporting date was "7/13/2019."

144.    On or about August 9, 2019, Experian sent Plaintiff dispute results indicating that they finally corrected Plaintiff's name and other identification information. Also, Experian stated that the Mohela/Dep of Ed accounts were not currently reporting on Plaintiff's Experian credit report, after they had been reporting inaccurately on Plaintiff's credit report for several months.

145.     Under information and belief, Equifax and Experian have failed to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

146.     Under information and belief, Equifax and Experian failed to conduct a reasonable re-investigation of the credit report and credit files it published and maintains concerning the Plaintiff following receipt of disputes of the accuracy of the account from Plaintiff.

147.     To date, MOHELA, AT&T, and Credit Management's failure to investigate Plaintiff's account was reckless, and showed a complete disregard for Plaintiff's good credit history.

148.     MOHELA, AT&T, and Credit Management's continue to report incorrect information to the credit bureaus.

149.     MOHELA, AT&T, and Credit Management's failed to conduct a reasonable investigation with respect to the disputed information and had never provided Plaintiff with an explanation for doing so.

150.     MOHELA, AT&T, and Credit Management's failed to review all relevant information provided by credit reporting agencies and Plaintiff.

151.     After it had knowledge of the inaccurate information being unable to be verified, MOHELA, AT&T, and Credit Management recklessly failed to delete or block the information on Plaintiff's credit report.

152.     To date, Equifax and Experian have failed to report the proper information on Plaintiff's credit report(s) despite having been given ample notice of the errors contained within despite being provided with all necessary and relevant supporting documentation regarding Plaintiff's accounts or lack thereof.

153.     Defendants' failure to report accurate information regarding Plaintiff's credit report has caused Plaintiff's credit score to drop dramatically (over 100 points).

154.     Defendants' failure to correct the inaccurate reporting of Plaintiff's credit worthiness, has adversely affected her ability to obtain financing, as plaintiff wanted to purchase various consumer items and couldn't utilize her credit because of Defendants' flagrant misconduct.

155.     Plaintiff has suffered both financially and emotionally.  Plaintiff has had severe depression at the hands of Defendants' inability to remove the inaccurate information from her credit reports.

156.     Plaintiff has lost an immense amount of time attempting to resolve these inaccuracies, sending letters, talking on the phone, and reviewing credit documents.

157.     Plaintiff suffered from embarrassment, sadness, fear, worry, anger, and frustration due to Defendants' failure to correct the inaccurate information.

158.     Additionally, Plaintiff has suffered damages including but not limited to stress, embarrassment, waste of her personal time, delay in applying for a consumer loan, frustration, anger, fear, and worry due to the Defendants' behavior.

159.     All conditions precedent to the filing of this action have occurred.

## CAUSES OF ACTION

### COUNT I
### (Violations of the FCRA-15 U.S.C. § 1681i
### as to Equifax)

160.     Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred fifty nine (159) above as if fully set out herein.

161.     Equifax violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful

reinvestigation, by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has to know is unreliable. Equifax was given all the details necessary to identify the account, to correct the inaccurate reporting, yet failed to remedy their mistake.

162.    Equifax, after reinvestigation and knowing MOHELA and AT&T  were unable to verify the inaccurate information, failed to promptly delete the items of information on Plaintiff's credit report in direct violation of 15 U.S.C. § 1681i(a)(5)(A)(i).  Equifax failed to inquire about any account level information that would have clearly demonstrated the erroneous reporting.

163.    Inexplicably, even in Equifax's dispute results letter, Equifax continued to call Plaintiff "Kaniya Perkins" further demonstrating their failure to maintain reasonable procedures to investigate claims.

164.    Furthermore, Equifax was in receipt of Plaintiff's police report, FTC Identity Theft Reports, and numerous letters stating that her identity as stolen, yet Equifax continued to report that damaging information on Plaintiff's credit report in violation of 15 U.S.C. § 1681c-2(a).

165.    As a result of this conduct, action and inaction of Equifax, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

166.    Equifax's conduct, action and inaction as willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 USC § 1681o.

167.    Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to1 5 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE,** Plaintiff respectfully requests that this Court award statutory, actual and punitive damages against Equifax Information Services, LLC, to Plaintiff; award Plaintiff her attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1681n and/or § 1681o; and grant all such additional relief as the Court deems appropriate.

## COUNT II
### (Violations of the FCRA-15 U.S.C. §1681e(b) as to Equifax)

168.    Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred fifty nine (159) above as if fully set out herein.

169.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff. Equifax received an almost identical letter as Experian, but failed to remove the inaccurate information.

170.    Equifax maintains a mixed credit file for Plaintiff, as they errantly report Plaintiff's name as "Kaniya Perkins," even after Equifax received several letters and correspondence from Plaintiff informing them that Plaintiff's name and other information is incorrect.

171.    Equifax's mixed credit file contains several student loans, accounts, and an inquiry that do not belong to Plaintiff, but likely belong to another unrelated individual.

172.    As a result of this conduct, action and inaction of Equifax, Plaintiff suffered damage by stress associated with poor credit, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

173.    Equifax's conduct, action, and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the

alternative, it was negligent, entitling Plaintiff to recover under 15 USC § 1681o. Equifax failed to properly conduct any independent investigation regarding the erroneous reporting

174.     Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Equifax Information Services, LLC for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

### COUNT III
### (Violation of the FCRA, 15 USC § 1681b(a) –
### As to Defendant Equifax)

175.     Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred fifty nine (159) above as if fully set out herein.

176.     The FCRA provides that a CRA may furnish a consumer's report to "a person which it has reason to believe intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of the consumer…." 15 USC § 1681b(a).

177.     An unknown individual to Plaintiff applied for credit in January 2019, at AT&T's business, that utilized Equifax' credit reporting services.

178.     During the credit application process, Plaintiff's personal information, without Plaintiff's knowledge or consent, was utilized in applying for credit.

179.     Plaintiff believes that the unknown individual's credit application contained some information that matched Plaintiff's information, but that credit application did not match all of Plaintiff's information.

180.     Equifax treated this unknown individual's credit application as if Plaintiff made the application, even though critical information was missing or did not match the information on file for the Plaintiff.

181.     Equifax failed to adequately review the application dates, applicant's date of birth, signatures, social security number, and other relevant identifying information.

182.     Equifax negligently and/or willfully violated the requirements of 15 USC 1681b by furnishing Plaintiff's credit report to AT&T who did not have a permissible purpose to access Plaintiff's credit report.

183.     As a result of Equifax' violations of the FCRA, Plaintiff has suffered actual damages. Plaintiff continues to suffer actual damages and plaintiff will suffer more damages in the future. Plaintiff seeks damages in an amount to be determined by the jury.

184.     Plaintiff requests punitive damages pursuant to 15 USC § 1681n(a)(2) against each of the CRA Defendants.

185.     Plaintiff requests costs of the action together with reasonable attorney fees as determined by the court in accordance with 15 USC §§ 1681n(a) and 1681o(a).

### COUNT IV
### (Violations of the FCRA-15 U.S.C. § 1681i
### as to Experian)

186.     Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred fifty nine (159) above as if fully set out herein.

187.     Experian violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, by failing to maintain reasonable procedures with which to filter and verify

disputed information in Plaintiff's credit file; and by relying upon verification from a source it has to know is unreliable. Experian was given all the details necessary to identify the account, to correct the inaccurate reporting, yet failed to remedy their mistake.

188.    Experian, after reinvestigation and knowing MOHELA, Credit Management, and non-party Acima Credit  were unable to verify the inaccurate information, failed to promptly delete the items of information on Plaintiff's credit report in direct violation of 15 U.S.C. § 1681i(a)(5)(A)(i).  Experian failed to inquire about any account level information that would have clearly demonstrated the erroneous reporting.

189.    Furthermore, Experian was in receipt of Plaintiff's police report, FTC Identity Theft Reports, and numerous letters stating that her identity as stolen, yet Experian continued to report the damaging information on Plaintiff's credit report in violation of 15 U.S.C. § 1681c-2(a).

190.    As a result of this conduct, action and inaction of Experian, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

191.    Experian's conduct, action and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 USC § 1681o.

192.    Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to1 5 U.S.C. § 1681n and/or § 1681o.

       **WHEREFORE,** Plaintiff respectfully requests that this Court award statutory, actual and punitive damages against Experian Information Solutions, LLC to Plaintiff; award Plaintiff

her attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1681n and/or § 1681o; and grant all such additional relief as the Court deems appropriate.

## COUNT V
### (Violations of the FCRA-15 U.S.C. §1681e(b)
### as to Experian)

193.     Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred fifty nine (159) above as if fully set out herein.

194.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff. Experian received an almost identical letter as Equifax, but failed to remove the inaccurate information.

195.     Experian maintains a mixed credit file for Plaintiff, as they errantly report Plaintiff's social security number as "6140" and "6740", her address as 79 Powell Avenue, Drew, MS 38737-9705, and her name as "Kanitaya Perkins", "Katrina Perkins", and "Kaniya Perkins" (See Experian Report # 1971-2633-26). Plaintiff has informed Experian, via phone and written correspondence, of the several mixed up identifying information, but Experian refuses to correct the inaccurate information.

196.     Experian's mixed up credit file contains several student loans, accounts, and an inquiry that do not belong to Plaintiff, but likely belong to another unrelated individual.

197.     As a result of this conduct, action and inaction of Experian, Plaintiff suffered damage by stress associated with poor credit, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

198.     Experian's conduct, action, and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the

alternative, it was negligent, entitling Plaintiff to recover under 15 USC § 1681o. Experian failed to properly conduct any independent investigation regarding the erroneous reporting

199.    Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Experian Information Solutions, LLC for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

### COUNT VI
### (Violations of the FCRA, 15 U.S.C. § 1681q and 15 U.S.C. § 1681b –
### as to Defendant AT&T)

200.    Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred fifty nine (159) above as if fully set out herein.

201.    Plaintiff is a "consumer" as defined by the FCRA.

202.    AT&T is a "person" as defined by the FCRA.

203.    AT&T's conduct violates both 15 U.S.C. § 1681q and 15 U.S.C. § 1681b by obtaining a consumer report under false pretenses by intentionally misleading Plaintiff, or knowingly without a permissible purpose and without authorization from Plaintiff, or permissible purpose.

204.    The foregoing violations were willful. AT&T knew that it was not authorized to request Plaintiff's credit reports, and AT&T acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681b.

205.    AT&T's illegal pull lowered Plaintiff's credit score and has forced her to refrain from filing for other credit opportunities.

206.     AT&T willfully violated 15 U.S.C. §1681b(f) by willfully procuring Plaintiff's consumer report without a permissible purpose.

207.     AT&T's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n.  In the alternative, it was negligent, entitling the Plaintiff to recover under 15 USC 1681o.

208.     Plaintiff is entitled to recover costs and attorney's fees from AT&T in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

        WHEREFORE, Plaintiff respectfully requests that this Court award statutory, actual and punitive damages against AT&T, to Plaintiff; award Plaintiff her attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1681n and/or § 1681o; and grant all such additional relief as the Court deems appropriate.

## COUNT VII
### (Violations of the FCRA-15 U.S.C. §1681s-2(b) as to AT&T)

209.     Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred fifty nine (159) above as if fully set out herein.

210.     AT&T published the false representations regarding Plaintiff's credit report to Equifax, non-party TransUnion, and Experian, and through Equifax, TransUnion and Experian to all of Plaintiff's potential lenders.

211.     AT&T violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's dispute of AT&T's representations; by failing to review all relevant information regarding same; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal

records to prevent the re-reporting of the AT&T representations to the consumer reporting agencies.

212.     AT&T violated 15 U.S.C. §1681s-2(b) by continuing to furnish inaccurate information to Equifax, TransUnion, and Experian after AT&T had been notified that the information was inaccurate.

213.     AT&T violated 15 U.S.C. §1681s-2(b) by continuing to furnish inaccurate information to Equifax, TransUnion and Experian that AT&T knew was inaccurate.

214.     Plaintiff spoke to AT&T many times over the phone in January 2019. Each time, AT&T refused to believe Plaintiff that she never applied for their services. AT&T falsely maintained that Plaintiff contracted for services, even though Plaintiff presented evidence that she was on active duty with the United States Air Force when the alleged AT&T services were used. AT&T failed to research Plaintiff's account, reporting incorrect information to the credit bureaus.

215.     AT&T did not have any reasonable basis to believe that Plaintiff made a hard inquiry. It also had substantial evidence by which to have verified that Plaintiff's credit inaccuracy should have been deleted from her credit report.  AT&T knowingly chose to not review or verify the inaccurate information.  Further, even if inexplicably AT&T attempted to plea ignorance, it had all of the evidence and information with which to recognize Plaintiff's credit report should have been corrected.

216.     As a result of this conduct, action and inaction of AT&T, Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

217.     AT&T's conduct, action and inaction as willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n.  In the alternative, it was negligent, entitling Plaintiff to recover under 15 USC 1681o.

218.     Plaintiff is entitled to recover costs and attorney's fees from AT&T in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE,** Plaintiff respectfully requests that this Court award statutory, actual and punitive damages against AT&T, to Plaintiff; award Plaintiff her attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1681n and/or § 1681o; and grant all such additional relief as the Court deems appropriate.

## COUNT VII
### (Violations of the FCRA-15 U.S.C. §1681s-2(b) as to MOHELA)

219.     Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred fifty nine (159) above as if fully set out herein.

220.     MOHELA published the false representations regarding Plaintiff's credit report to Equifax, non-party TransUnion, and Experian, and through Equifax, non-party TransUnion, and Experian to all of Plaintiff's potential lenders.

221.     MOHELA violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's dispute of fraudulent student loan representations; by failing to review all relevant information regarding same; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the MOHELA representations to the consumer reporting agencies.

222.      MOHELA violated 15 U.S.C. §1681s-2(b) by continuing to furnish inaccurate information to Equifax, non-party TransUnion, and Experian after MOHELA had been notified that the information was inaccurate.

223.      MOHELA violated 15 U.S.C. §1681s-2(b) by continuing to furnish inaccurate information to Equifax, TransUnion and Experian that MOHELA knew was inaccurate.

224.      Plaintiff spoke to MOHELA many times over the phone. Each time, MOHELA refused to believe Plaintiff that she never applied for their services. MOHELA falsely maintained that Plaintiff was responsible for student loans until April 2019, when MOHELA issued a letter stating that Plaintiff was the victim of identity theft and her loans were to be discharged.

225.      Even after the April 2019 MOHELA discharge letter, MOHELA continued to report inaccurate and false information to Equifax, non-party TransUnion, and Experian in violation of 15 U.S.C. §1681s-2(b).

226.      Through the ACDV process, MOHELA was notified of Plaintiff's numerous disputes regarding the fraudulent student loans on her credit reports. However, MOHELA failed to conduct a reasonable investigation regarding the accuracy of the reported student loans.

227.      In response, MOHELA notified Equifax, Experian and/or non-party TransUnion that it verified the information reported by MOHELA.

228.      MOHELA had access to its own records database which contains the discharge April 2019 letter. Had MOHELA performed a simple investigation into its own records, MOHELA would have correctly communicated to Equifax, non-party TransUnion, and Experian that Plaintiff was the victim of identity theft, and MOHELA discharged Plaintiff form all of the fraudulent loans.

229.     MOHELA did not have any reasonable basis to believe that Plaintiff took out any student loans.  It also had substantial evidence by which to have verified that Plaintiff's credit inaccuracy should have been deleted from her credit report.  MOHELA knowingly chose to not review or verify the inaccurate information.  Further, even if inexplicably MOHELA attempted to plea ignorance, it had all of the evidence and information with which to recognize Plaintiff's credit report should have been corrected.

230.     At best, MOHELA verified the false information by confirming some of Plaintiff's personal identifying information with the personal identifying information reported by a consumer reporting agency.

231.     MOHELA notified at least one consumer reporting agency that its reporting of the inaccurate information reported by MOHELA was accurate.

232.     MOHELA made no effort to escalate Plaintiff's fraud disputes to management or otherwise take steps to verify the applicant's identity.

233.     MOHELA continues to receive monies from the federal government for servicing the fraudulent loans.

234.     As a result of this conduct, action and inaction of MOHELA, Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

235.     MOHELA's conduct, action and inaction as willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n.  In the alternative, it was negligent, entitling Plaintiff to recover under 15 USC 1681o.

236.     Plaintiff is entitled to recover costs and attorney's fees from MOHELA in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**WHEREFORE,** Plaintiff respectfully requests that this Court award statutory, actual and punitive damages against MOHELA, to Plaintiff; award Plaintiff her attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1681n and/or § 1681o; and grant all such additional relief as the Court deems appropriate.

**COUNT IX**
**(Violation of the FDCPA – as to**
**MOHELA)**

237.    The Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred fifty nine (159) above as if fully set out herein.

238.    At all times relevant to this action MOHELA is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

239.    MOHELA is a corporation collecting an alleged obligation which arises out of personal, family or household transaction.

240.    MOHELA is a corporation attempting to collect an alleged consumer debt from Plaintiff.

241.    MOHELA is a "debt collector[s]" as defined by 15 U.S.C. § 1692(a)(6).

242.    The alleged MOHELA debt that is the subject matter of this Complaint is a "consumer debt[s]" as defined by U.S.C. § 1692(a)(5).

243.    MOHELA has violated 15 U.S.C. § 1692e(2) by falsely representing the character and legal status of the alleged debt.

244.    MOHELA has violated 15 U.S.C. § 1692g(a)(4) by failing to verify the debt after Plaintiff provided a written dispute.

245.    MOHELA failed to verify the requested information and failed to cease collection efforts altogether, typified in its debt collection letters.

246.     Furthermore, MOHELA failed to properly communicate the aforementioned information to the credit bureaus, or mislead the credit bureaus with its communication.

247.     MOHELA has violated 15 U.S.C. § 1692f(1) by collecting an amount not authorized by contract or permitted by law.

248.     MOHELA sought to collect over $17,000 from Plaintiff, having full knowledge that Plaintiff was not the individual responsible for this debt.

     **WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against MOHELA., for statutory damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT X
### (Violation of the FDCPA – as to
### Credit Management)

249.     The Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred fifty nine (159) above as if fully set out herein.

250.     At all times relevant to this action Credit Managment is subject to and must abide by 15 U.S.C. § 1692 *et seq*.

251.     Credit Management is a corporation collecting an alleged obligation which arises out of personal, family or household transaction.

252.     Credit Management is a corporation attempting to collect an alleged consumer debt from Plaintiff.

253.     Credit Management is a "debt collector[s]" as defined by 15 U.S.C. § 1692(a)(6).

254.     The alleged Credit Management debt that is the subject matter of this Complaint is a "consumer debt[s]" as defined by U.S.C. § 1692(a)(5).

255.     Credit Management has violated 15 U.S.C. § 1692e(2) by falsely representing the character and legal status of the alleged debt.

256.     Credit Management has violated 15 U.S.C. § 1692g(a)(4) by failing to verify the debt after Plaintiff provided a written dispute.

257.     Credit Management failed to verify the requested information and failed to cease collection efforts altogether, typified in its April 2019 letters.

258.     Furthermore, Credit Management failed to properly communicate the aforementioned information to the credit bureaus, or mislead the credit bureaus with its communication.

259.     Credit Management has violated 15 U.S.C. § 1692f(1) by collecting an amount not authorized by contract or permitted by law.

260.     Credit Management sought to collect over $300 from Plaintiff, having full knowledge that Plaintiff was not the individual responsible for this debt.

        **WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Credit Management, for statutory damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

### COUNT XI
### (Violation of the FDCPA – as to
### Radius Global)

261.     The Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred fifty nine (159) above as if fully set out herein.

262.     At all times relevant to this action Radius Global is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

263.     Radius Global is a corporation collecting an alleged obligation which arises out of personal, family or household transaction.

264.     Radius Global is a corporation attempting to collect an alleged consumer debt from Plaintiff.

265.     Radius Global is a "debt collector[s]" as defined by 15 U.S.C. § 1692(a)(6).

266.     The alleged Radius Global debt that is the subject matter of this Complaint is a "consumer debt[s]" as defined by U.S.C. § 1692(a)(5).

267.     Radius Global has violated 15 U.S.C. § 1692e(2) by falsely representing the character and legal status of the alleged debt.

268.     Radius Global has violated 15 U.S.C. § 1692g(a)(4) by failing to verify the debt after Plaintiff provided a written dispute.

269.     Radius Global failed to verify the requested information and failed to cease collection efforts altogether, typified in its May 2019 letters.

270.     Furthermore, Radius Global failed to properly communicate the aforementioned information to the credit bureaus, or mislead the credit bureaus with its communication.

271.     Radius Global has violated 15 U.S.C. § 1692f(1) by collecting an amount not authorized by contract or permitted by law.

272.     Radius Global sought to collect over $300 from Plaintiff, having full knowledge that Plaintiff was not the individual responsible for this debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Radius Global, for statutory damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ William W. Holtz*
William W. Holtz, Esq.
Texas Bar No.: 24092533
Holtz Law Firm
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (832) 746-4041
Facsimile: (713) 467-1399
Primary Email: wholtz@holtzlegal.com
*Local Counsel for Plaintiff*